UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

In re                                                          Case No. 19-10655-SMG

CONSUMER ADVOCACY CENTER, INC.,                                Chapter 7

    Debtor.
_____/

SONYA SALKIN SLOTT,                                            Adv. No
Chapter 7 Trustee

    Plaintiff,

v.

LEAD SCIENCE, LLC,

    Defendant.
_____/

**COMPLAINT TO AVOID AND RECOVER
FRAUDULENT TRANSFERS**

Plaintiff, SONYA SALKIN SLOTT (the "**Plaintiff**" or the "**Trustee**"), as Chapter 7 Trustee for Consumer Advocacy Center, Inc. (the "**Debtor**") Order Setting Status Conference and Establishing Procedures files this Complaint to Avoid and Recover Fraudulent Transfers against the Defendant, LEAD SCIENCE, LLC (the "**Defendant**"), and alleges as follows:

**THE PARTIES, JURISDICTION AND VENUE**

1.    On January 16, 2019 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida (the "**Bankruptcy Court**").

2.    Prior to the Petition Date, Albert Kim was the president of the Debtor. Upon information and belief, as of the Petition Date, Albert Kim was either the Debtor's sole or principal shareholder.

3. On July 31, 2019, the Bankruptcy Court entered an Order directing the appointment of a Chapter 11 Trustee for the Debtor. Plaintiff, Sonya S. Slott, was thereafter appointed as the Debtor's Chapter 11 Trustee.

4. On August 20, 2019, the Debtor's case was converted to a Chapter 7 proceeding. Plaintiff, Sonya S. Slott, was thereafter appointed as the Debtor's Chapter 7 Trustee.

5. Defendant is an Ohio corporation with a business address of 24 North High Street, Akron, Ohio 44308.

6. The Bankruptcy Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 157(a) and 1334(b).

7. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O). The Trustee consents to the entry of final orders and judgment by the Bankruptcy Court.

8. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

9. All conditions precedent to the filing of this action have been performed, occurred, waived or have otherwise been excused.

## FACTS COMMON TO ALL COUNTS

### The Underlying Scheme

10. Prior to the Petition Date, the Debtor was purportedly in the business of providing student loan debt relief services. The Debtor did business as "Premier Student Loans" or "Premier Student Loan Center". The Debtor claims to have "assisted Federal student loan borrowers by helping them choose the best Dept. of Education repayment programs to suit their needs." The Debtor also claims to have "assisted such borrowers by preparing the requisite documentation they needed to submit to the Dept. of Education." *See* ECF No. 11 in Case No. 19-10655-SMG.

11. Instead, the Debtor operated an unlawful debt relief enterprise that deceived thousands of federal student loan borrowers and collected millions in illicit advance fees in violation of various federal and state consumer protection laws.

12. Among other things, while the Debtor purported to help federal student loan borrowers obtain loan forgiveness or lower monthly payments through programs administered by the U.S. Department of Education, it instead (a) deceived consumers by misrepresenting (i) that they would qualify for loan forgiveness in a matter of months, when forgiveness takes at least 10 years of on-time payments and is determined by the Department of Education, (ii) that they were approved for lower monthly payments on their student loans when consumers had not yet been approved or when new payment amounts were based on false information, (iii) that the lower payments would be permanent when in fact they are subject to change based on certain factors, (b) falsely led consumers to believe that their payments to the Debtor would go towards reducing student loan balances, (c) failed to inform consumers that it was their practice to request that consumers' loans be placed into forbearance or that interest would continue to accrue during the forbearance period, thereby increasing loan balances, (c) submitted false information about consumers' income, family size and marital status on loan adjustment applications, and (d) failed to use payments from consumers to reduce student loan debts. Moreover, the Debtor collected advance fees for their purported debt relief services, in violation of the Telemarketing Sales Rule (16 C.F.R. § 310).

13. Consumers paid millions of dollars and received little, if anything, in return. Consumers generally did not get their debts paid, settled, or resolved, and did not see their credit improve. Instead, consumers were left in worse financial positions, some of whom were already in financial distress.

14. Beginning in November 2015 and thereafter, the amounts collected from consumers, including fees, in violation of applicable federal law and common law created liabilities for the Debtor and were sufficient to cause the Debtor to be insolvent.

15. As a result of the acts and conduct of the Debtor and its principal, claims in excess of $81 million were filed by several government entities on behalf of consumers and in furtherance of consumer protection laws. Among other claims that were filed in the bankruptcy case, the State of Minnesota filed Proof of Claim number 4-2 in the amount of $32,923,344.02, the State of North Carolina filed Proof of Claim number 5-2 in the amount of $2,871,359.26, the Federal Bureau of Consumer Financial Protection filed Proof of Claim number 6-2 in the amount of $35,105,017.93, and the State of California filed claim number 11-1 in the amount of $10,545,496.40.

16. In addition, at all times material hereto, the Debtor was inadequately capitalized and/or was otherwise unable to pay its debts as such debts matured or became due, or was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital.

17. The Debtor, through its management and control persons, misappropriated and misdirected consumer funds that were supposed to have been used by the Debtor for the debt relief services promised to consumers. Instead, the funds were used to among other things support the lifestyles of the Debtor's insiders and continue the illicit operations.

**The Enforcement Action**

18. On October 21, 2019, the Federal Bureau of Consumer Financial Protection as well as the State of Minnesota, the State of North Carolina and the State of California (collectively, the "**Governments**") filed a Complaint in the United States District Court for the Central District of California (the "**District Court**") against the Debtor and certain related entities and individuals,

including the Debtor's president Albert Kim, captioned *Bureau of Consumer Financial Protection, et al., v. Consumer Advocacy Center, Inc., True Count Staffing, Inc., Prime Consulting, LLC, Albert Kim, Kaine Wen, and Tuong Nguyen, Defendants, and Infinite Management Corp., Hold the Door Corp. and TN Accounting, Inc., Relief Defendants* Case No. 19-cv-01998-JVS (the "**District Court Proceeding**"), which complaint was amended on February 24, 2020 to add certain other defendants.

19. As alleged by the Governments in the District Court Proceeding, the Debtor, through Albert Kim, and other defendants named in the District Court Proceeding, operated a debt-relief enterprise since at least 2015 which deceived thousands of federal student loan borrowers and collected millions in unlawful advance fees in violation of various federal and state consumer protection laws, including the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531, 5536(a), 5564 & 5565, the Telemarketing and Consumer Fraud and Abuse Prevention Act 15 U.S.C. §§ 6101-6108 and the Telemarketing Sales Rule (TSR), 16 C.F.R. Part 310. Among other things, the Debtor, Albert Kim and other defendants engaged in an unlawful student-loan debt-relief business that, among other things, harmed consumers nationwide by charging unlawful advance fees, deceiving consumers, and misrepresenting the terms and conditions of services.

20. On October 21, the District Court entered an *Ex-Parte Temporary Restraining Order with Asset Freeze, Appointment of Receiver, and Other Equitable Relief, and Order to Show Cause why a Preliminary Injunction should not Issue* [ECF No. 24 in the District Court Proceeding] (the "**TRO**").

21. On November 15, 2019, the District Court entered a *Stipulated Preliminary Injunction With Asset Freeze, Appointment of Receiver, and Other Equitable Relief* [ECF No. 103 in the District Court Proceeding] (the "**Preliminary Injunction**").

22. In the Preliminary Injunction, the District Court found that good cause existed to conclude that the Debtor and Albert Kim, among other things, violated federal and state consumer protection laws, and further concluded that the Governments are likely to prevail on the merits in the District Court Proceeding. Notably, the Preliminary Injunction was entered into with the agreement of all other defendants to the litigation.

23. Prior to the commencement of the District Court Proceeding and facing investigation and scrutiny from law enforcement and federal and state regulators, the Debtor and Albert Kim transferred the Debtor's purported debt relief operation to related corporate entities in late 2019, including to True Count Staffing Inc. d/b/a SL Account Management and Prime Consulting LLC d/b/a Financial Preparation Services, and otherwise drained and transferred assets out of Debtor. Several months later, Albert Kim caused the Debtor to file for Chapter 11 in this Court.

24. Following the entry of the TRO and the Preliminary Injunction, the Receiver appointed for the entities which took over the Debtor's operations concluded that the business could not be operated profitably or lawfully, and shut the operations down.

25. To date, several of the defendants in the District Court Proceeding have stipulated to substantial final monetary judgments, in addition to among other things a permanent ban on telemarketing and offering debt relief services: Tuong Nguyen ($95 million), TN Accounting ($445,000), Prime Consulting, LLC ($95 million), Horizon Consulting LLC ($13 Million), Hold the Door Corp. ($1.6 million ) and Mice and Men LLC ($5 million)  [See ECF Nos. 210, 211 and 218 in the District Court Proceeding].

**Defendant's Role and Relationship with the Debtor's Scheme**

26. Defendant is a lead generation and marketing company. Lead generation is the process of attracting strangers to a business for purposes of selling such business' services. In or about May of 2017, the Debtor engaged the Defendant for this purpose, in order to drive consumers to purchase the Debtor's fraudulent services.

27. This lead generation and marketing relationship was critical to the Debtor's scheme. Without the ability to drive consumer traffic to the Debtor, the Debtor effectively had little or no operations, could not maintain the appearance of a legitimate debt relief business, could not receive payments from consumers that provided the great majority of its "revenues", could not make payroll for the telemarketers employed to dupe consumers, and could not engage in any other of the myriad of transactions that cheated consumers out of their money and then diverted ill-gotten funds for the personal benefit of insiders. In short, the scheme could not exist without the assistance of Defendant.

28. The Debtor utilized Defendant as the fuel which drove its consumer debt relief scheme. In exchange, the Debtor paid Defendant almost $130,000 for services which provided no legitimate benefit to the Debtor's illicit and unlawful operations.

**THE AVOIDABLE TRANSFERS AT ISSUE IN THIS CASE**

29. Between May 18, 2017 and February 23, 2018, the Debtor transferred the sum of $126,589.00 to Defendant (the "**Transfers**"). A schedule of the Transfers is attached as **Exhibit "A"**.

30. The Debtor did not receive any legitimate benefit in exchange for the Transfers.

## COUNT I
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS
## PURSUANT TO SECTIONS 548(a)(1)(A) & (B) OF THE BANKRUPTCY CODE

31. The Plaintiff re-states and re-alleges paragraphs 1 through 30 as if fully set forth herein.

32. Pursuant to 11 U.S.C. § 548(a)(1)(A) and 11 U.S.C. § 544, the Trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years (under Section 548 of the Bankruptcy Code) before the date of the filing of the petition, if the debtor voluntarily or involuntarily –

> made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; . . .

33. Alternatively, pursuant to 11 U.S.C. § 548(a)(1)(B) and 11 U.S.C. §544, the Trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years (under Section 548 of the Bankruptcy Code) before the date of the filing of the petition, if the debtor voluntarily or involuntarily –

> (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)   (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
>
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; . . .

34. Further, pursuant to 11 U.S.C. § 550(a), in a fraudulent transfer action commenced under Sections 544 and 548 of the Bankruptcy Code, the Trustee may recover, for the benefit of the estate, the property transferred, or, if the Court so orders, the value of such property, from (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee.

35. The Transfers that were made within two (2) years of the Petition Date to Defendant constitute transfers of an interest in property of the Debtor avoidable under 11 U.S.C. § 548(a)(1)(A), were made with actual intent to hinder or delay creditors of the Debtor, and such Transfers were not received in good faith by the Defendant. Among other badges of fraud and/or lack of good faith, at or near the time of the Transfers: (i) the Debtor, through Albert Kim, was operating an unlawful debt-relief enterprise in violation of federal and state consumer protection laws, (ii) the Debtor was insolvent including not paying its debts as they became due; and (iii) the Debtor did not receive reasonably equivalent value for the Transfers.

36. Moreover, the Transfers that occurred within two (2) years of the Petition Date to Defendant also constitute constructively fraudulent transfers of an interest in property of the Debtor avoidable under 11 U.S.C. § 548(a)(1)(B), as the Debtor (i) did not receive reasonably equivalent value at the time such Transfers were made; (ii) was insolvent at the time of the Transfers to Defendant or became insolvent as a result thereof; (iii) was engaged or was about to engage in a business or transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or (iv) intended to incur, or believed or reasonably should have believed, that it would incur debts beyond its ability to pay as they came due.

9

37. Defendant was the initial transferee or the entity for whose benefit the Transfers were made, and as a result, the Trustee is entitled to avoid and recover the Transfers pursuant to 11 U.S.C. §550(a)(1).

38. To the extent that Defendant is the immediate or mediate (subsequent) transferee of the initial transferee for whose benefit the Transfers were made, the Trustee is entitled to recover the Transfers pursuant to 11 U.S.C. §550(a)(2).

**WHEREFORE**, the Plaintiff, Sonya S. Slott, as Chapter 7 for the Debtor Consumer Advocacy Center, Inc., demands judgment against Defendant (a) determining that each of the Transfers that occurred within two (2) years of the Petition Date are avoidable under 11 U.S.C. §548(a)(1)(A) and (B); (b) avoiding each of the Transfers and entering judgment in favor of the Plaintiff against Defendant in the amount of the Transfers, or the value thereof, and as otherwise detailed in the amounts set forth herein, plus pre-judgment interest from the date of the transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. §550; (c) disallowing any claim that Defendant may have against the Estate of the Debtor, including without limitation, pursuant to and as provided in 11 U.S.C. §502(d); and (d) for such other and further relief as the Court deems just and proper.

## COUNT II
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 544 OF THE BANKRUPTCY CODE AND SECTION 726.105(1)(a) & (b) OF THE FLORIDA STATUTES

39. The Plaintiff re-states and re-alleges paragraphs 1 through 30 as if fully set forth herein.

40. Pursuant to 11 U.S.C. §544(b), the Trustee may avoid any transfer of an interest of the Debtor in property or any obligation incurred by the Debtor that is voidable under applicable

law by a creditor holding an unsecured claim that is allowable under 11 U.S.C. § 502 or that is not allowable only under 11 U.S.C. § 502(e).

41. Florida Statutes Section 726.105(1)(a) provides:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > (a) With actual intent to hinder, delay, or defraud any creditor of the debtor. . .

42. Alternatively, Florida Statutes Section 726.105(1)(b) provides:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (b) Without receiving reasonably equivalent in value in exchange for the transfer or obligation, and the debtor:
>
> > (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> >
> > (2) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

43. Further, pursuant to 11 U.S.C. §550, in a fraudulent transfer action commenced under Chapter 726 of the Florida Statutes, the Trustee may recover, for the benefit of the estate, the property transferred, or, if the Court so orders, the value of such property, from (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; and (2) any immediate or mediate transferee of such initial transferee.

11

44. The Transfers to Defendant, or the value of thereof, were transfers made by the Debtor with the actual intent to hinder, delay, and/or defraud creditors of Debtor pursuant to § 726.105(1)(a), Florida Statutes.

45. At the time of the Transfers, the Debtor was, and still is, indebted in an amount greater than the Transfers.

46. Moreover, the Transfers to Defendant were made without the Debtor receiving reasonably equivalent value in exchange for the Transfers pursuant to §726.105(1)(b), Florida Statutes.

47. At the time of the Transfers, the Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transactions in which the Debtor was engaged.

48. At the time of the Transfers, the Debtor had incurred debts beyond its ability to pay as they became due.

49. The Debtor was otherwise insolvent at the time of the Transfers.

50. As a result, the Debtor's estate has been damaged pursuant to 11 U.S.C. § 544(b) for the total value of the Transfers.

51. Defendant was the initial transferee or the entity for whose benefit the Transfers were made, and as a result, the Trustee is entitled to avoid and recover the Transfers from Defendant under 11 U.S.C. § 544 of the Bankruptcy Code and §726.105(1)(a) & (b) of Florida Statutes.

52. Alternatively, Defendant is the immediate or mediate (subsequent) transferee of the initial transferee for whose benefit the Transfers were made, and as a result, the Trustee is entitled to recover the Transfers as referenced above from Defendant pursuant to 11 U.S.C. §550(a)(2).

53. Therefore, in accordance with 11 U.S.C. §550(a), the recovery of property for the benefit of the Debtor's estate is authorized to the extent that the respective Transfers are avoided under §726.105(1)(a) & (b) of the Florida Statutes.

**WHEREFORE**, the Plaintiff, Sonya S. Slott, as Chapter 7 for Consumer Advocacy Center, Inc., demands judgment against Defendant (a) determining that each of the Transfers are avoidable under Florida Statutes 726.105(1)(a) & (b); (b) avoiding the Transfers and entering judgment in favor of the Plaintiff against Defendant in the amount of the Transfers, or the value of thereof, and as otherwise detailed in the amounts set forth herein, plus pre-judgment interest from the date of the transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. §550; (c) disallowing any claim that Defendant may have against the Estates of the Debtors, including without limitation, pursuant to and as provided in 11 U.S.C. §502(d); and (d) for such other and further relief as the Court deems just and proper.

## COUNT III
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 544 OF THE BANKRUPTCY CODE AND SECTION 726.106(1) OF THE FLORIDA STATUTES

54. The Plaintiff re-states and re-alleges paragraphs 1 through 30 as if fully set forth herein.

55. Pursuant to 11 U.S.C. §544(b), the Trustee may avoid any transfer of an interest of the Debtor in property or any obligation incurred by the Debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under 11 U.S.C. §502 or that is not allowable only under 11 U.S.C. §502(e).

56. Florida Statutes Section 726.106(1) provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

57. The Transfers to Defendant, or the value of thereof, and as otherwise detailed in the amounts set forth herein, were made without the Debtor receiving reasonably equivalent value in exchange for such transfers pursuant to §726.106(1), Florida Statutes.

58. As set forth above, at the time of the Transfers, the Debtor was insolvent or became insolvent as a result of the Transfers.

59. At the time of the Transfers, the Debtor was indebted to creditors in an amount in excess of the Transfers.

60. As a result thereof, the Debtor's estate has been damaged pursuant to 11 U.S.C. § 544(b) for the total value of the Transfers.

61. Defendant was the initial transferee or the entity for whose benefit the Transfers, or the value of thereof, and as otherwise detailed in the amounts set forth herein, were made, and as a result, the Trustee is entitled to recover the Transfers pursuant to 11 U.S.C. §550(a)(1).

62. To the extent that the Defendant is the immediate or mediate transferee of the initial transferee for whose benefit the Transfers were made, and as a result, the Trustee is entitled to recover the Transfers as referenced above from Defendant pursuant to 11 U.S.C. §550(a)(2).

63. As a result of the above, the Trustee can avoid the Transfers to Defendant pursuant to Sections 544 and 548 of the Bankruptcy Code and Chapter 726 of the Florida Statues, and recover the value thereof for the benefit of the estate pursuant to Section 550 of the Bankruptcy Code.

**WHEREFORE**, the Plaintiff, Sonya S. Slott, as Chapter 7 for Consumer Advocacy Center, Inc., demands judgment against Defendant (a) determining that each of the Transfers are fraudulent and avoidable under 11 U.S.C. §726.106(1), Fla. Stats.; (b) avoiding the Transfers and entering judgment in favor of the Plaintiff against Defendant in the amount of the Transfers, or the value of thereof, and as otherwise detailed in the amounts set forth herein, plus pre-judgment interest from the date of the transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. §550; (c) disallowing any claim that Defendant may have against the Debtor's estate, including without limitation, pursuant to and as provided in 11 U.S.C. §502(d); and (d) for such other and further relief as the Court deems just and proper.

## COUNT IV
## UNJUST ENRICHMENT

64. The Trustee repeats and realleges Paragraphs 1 through 30 as if fully set forth herein.

65. Through the Transfers, the Debtor conferred a benefit upon Defendant who had knowledge thereof.

66. Defendant voluntarily accepted and retained the benefits of the Transfers conferred.

67. The facts and circumstances render Defendant's retention of the benefits of the Transfers inequitable unless Defendant pays the Plaintiff the value of the Transfers.

**WHEREFORE**, Plaintiff, Sonya S. Slott, as Chapter 7 trustee for the Debtor, Consumer Advocacy Center, Inc., demands judgment against Defendant (a) for the value of the Transfers; (b) prejudgment interest; (c) costs; and (d) for such other and further relief as the Court deems just and proper.

Dated January 12, 2021.

        **I hereby certify that I am admitted to the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).**

        GENOVESE JOBLOVE & BATTISTA, P.A.
        *Counsel for the Plaintiff, Sonya S. Slott, Trustee*
        100 S.E. Second Street, Suite 4400
        Miami, Florida 7131
        Tel: (305) 349-2300
        Fax: (305) 349-2310

        By:   /s/ Gregory M. Garno
             Glenn D. Moses, Esq.
             Fla. Bar. No. 174556
             Email: gmoses@gjb-law.com
             Gregory M. Garno, Esq.
             Fla. Bar No. 087505
             Email: ggarno@gjb-law.com
             Heather L. Harmon, Esq.
             Florida Bar No. 013192
             Email: hharmon@gjb-law.com

# EXHIBIT "A"
*(Transfers)*

In re: Consumer Advocacy Center, Inc.
Case No. 19-10655-SMG

Schedule of Payments to Lead Science LLC
For the Period of January 16, 2015 through January 16, 2019

*(Sorted in Chronological Order)*

| Bank Name | Account Name | Account No. | Date Cleared | Type | Check No. | Payee | Amount |
|---|---|---|---|---|---|---|---|
| Chase | Consumer Advocacy Center | x1522 | 05/18/17 | Debit | N/A | Lead Science LLC | $ (1,430.00) |
| Chase | Consumer Advocacy Center | x1522 | 05/25/17 | Debit | N/A | Lead Science LLC | (4,380.00) |
| Chase | Consumer Advocacy Center | x1522 | 06/13/17 | Debit | N/A | Lead Science LLC | (5,185.00) |
| Chase | Consumer Advocacy Center | x1522 | 06/28/17 | Debit | N/A | Lead Science LLC | (3,240.00) |
| Chase | Consumer Advocacy Center | x1522 | 06/28/17 | Debit | N/A | Lead Science LLC | (5,415.00) |
| Chase | Consumer Advocacy Center | x1522 | 06/28/17 | Debit | N/A | Lead Science LLC | (4,300.00) |
| Chase | Consumer Advocacy Center | x1522 | 07/05/17 | Debit | N/A | Lead Science LLC | (8,480.00) |
| Chase | Consumer Advocacy Center | x1522 | 07/17/17 | Debit | N/A | Lead Science LLC | (11,775.00) |
| Chase | Consumer Advocacy Center | x1522 | 07/17/17 | Debit | N/A | Lead Science LLC | (4,804.00) |
| Chase | Consumer Advocacy Center | x1522 | 07/21/17 | Debit | N/A | Lead Science LLC | (8,496.00) |
| Chase | Consumer Advocacy Center | x1522 | 07/28/17 | Debit | N/A | Lead Science LLC | (10,308.00) |
| Chase | Consumer Advocacy Center | x1522 | 08/07/17 | Debit | N/A | Lead Science LLC | (13,172.00) |
| Chase | Consumer Advocacy Center | x1522 | 08/14/17 | Debit | N/A | Lead Science LLC | (13,092.00) |
| Chase | Consumer Advocacy Center | x1522 | 08/21/17 | Debit | N/A | Lead Science LLC | (6,600.00) |
| Chase | Consumer Advocacy Center | x1522 | 08/28/17 | Debit | N/A | Lead Science LLC | (6,868.00) |
| Chase | Consumer Advocacy Center | x1522 | 09/05/17 | Debit | N/A | Lead Science LLC | (9,716.00) |
| Chase | Consumer Advocacy Center | x1522 | 09/11/17 | Debit | N/A | Lead Science LLC | (4,788.00) |
| Chase | Consumer Advocacy Center | x1522 | 09/18/17 | Debit | N/A | Lead Science LLC | (2,900.00) |
| Chase | Consumer Advocacy Center | x1522 | 09/26/17 | Debit | N/A | Lead Science LLC | (924.00) |
| Chase | Consumer Advocacy Center | x1522 | 02/12/18 | Debit | N/A | Lead Science LLC | (524.00) |
| Chase | Consumer Advocacy Center | x1522 | 02/23/18 | Debit | N/A | Lead Science LLC | (20.00) |
| Chase | Consumer Advocacy Center | x1522 | 02/23/18 | Debit | N/A | Lead Science LLC | (172.00) |
| | | | | | | TOTAL | $ (126,589.00) |